## Hans Helmeland, Appellee, v. D. J. McDonald, Appellant.

### Gen. No. 5576.

1. VERDICTS—*when not disturbed as against the evidence.* A verdict will not be set aside as against the evidence unless clearly and manifestly so.

2. INSTRUCTIONS—*how to be construed.* Instructions are to be construed as a series and the omissions of one may be supplied by the contents of another.

Assumpsit. Appeal from the Circuit Court of Kane county; the Hon. MAZZINI SLUSSER, Judge, presiding. Heard in this court at the October term, 1911. Affirmed. Opinion filed March 13, 1912.

N. J. ALDRICH and JAMES MAHER, for appellant.

JOHN M. RAYMOND and JOHN K. NEWHALL, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

The common counts and the general issue were the pleadings in this suit by appellee against appellant, wherein appellee recovered a judgment against appellant for $980 for wages. Appellant owned a large farm a little west of Aurora. For a number of years he ran it as a dairy farm and had a large number of milch cows thereon and young cattle. He also kept blooded stallions and brood mares, some of the mares being owned by him and some by others, and he there trained race horses. These were kept in a barn erected for that special purpose. The land was largely used for pasture and meadow and for raising oats and other feed for the stock. Appellant's main business was that of a railroad contractor, and during much of the time covered by appellee's employment appellant had contracts in the south. When appellee first began to work

for appellant, either appellant or his wife were upon the farm, and had direction of its affairs. Thereafter appellant began to be absent for two weeks or a month or two months at a time, and afterwards appellant's wife ceased to live upon the farm, and finally appellant was absent in the south in his railroad work nearly all the time for about two years. Appellee was first hired by appellant and labored as a common farm hand from November 1, 1904, to March 1, 1905, at $30 per month. In the latter part of February 1905 appellant hired appellee at $40 per month, and no other rate was ever named between them. Appellee testified that appellant offered to give him $40 per month if he would stay for one year and that he accepted that offer. Appellant testified that he offered him $40 per month if he could manage the farm, as the foreman was going to leave, and that appellee accepted that offer. Appellee testified that before the end of that year, March 1, 1906, he told appellant that he wished to leave at the end of the year, and that appellant asked him to stay till he could get another man to take his place, and that he accordingly stayed, and that appellant hired another man but the latter never came and appellant went away on his railroad business in the south and appellee stayed on. Under date of June 25, 1906, appellant wrote appellee a letter which appellee construed to mean that he would thereafter be paid what his services were reasonably worth and he claims that from that time on he was entitled to recover what his services were reasonably worth, and that they were worth $80 per month. He stayed till September 28, 1909. From the time when the bargain at $40 per month was made his duties were greatly increased, especially after appellant and his wife ceased to reside at the farm. He began as an ordinary farm hand under the control of appellant or his foreman. He ultimately came to have entire charge of the farm, hired and discharged men, paid the bills

incurred at the farm, collected the proceeds of the farm and bills due appellant in connection with the horse business, determined when to sue and when not to sue persons owing appellant on matters connected with the farm, and when and how much credit to extend and when it was necessary to exact security and what security to take. During the term he was there he handled about $3800 of the avails of the farm. He wrote many letters to appellant, giving details of the farm business and the horse business, and he received from appellant many letters with full details concerning the conduct of the farm business. Many times appellant directed him exactly what to do. Many other times appellant directed him to use his judgment and discretion, and he did so.

The letter of June 25, 1906, first directed him as to the harvest and as to hiring men and as to certain other things about the farm and dairy business. The letter then gave various directions with reference to sending four certain colts to Lexington, at which place counsel say there were to be races. Then the letter contains these words: "Look after drivers and everything and I will see you well paid and a present besides. I will give you a horse good enough to go down and beat the gang—before (I am done)." The letter then proceeds with other matters about the farm. Appellee construed the quoted part above to mean that he would thereafter be paid a reasonable compensation for his services, and he testified that he thereupon took entire charge of the farm and dairy business and horse business, and it is clear that he relied upon that let-- ter as giving him an increase of compensation for his increased responsibility. He testified that he considered $80 per month the price which he ought to have, and he produced a witness, a farmer in the neighborhood familiar to some extent with the service he rendered, who testified that $80 per month was the reasonable and going price for such services. Ap-

pellant produced several witnesses owning large farms in that county, who testified that $40 per month was the usual and going rate for such services. These men, however, were not specially familiar with the responsibilities assumed by appellee and they were talking with reference to farms where the owner lived on the farm or near by and was in constant touch with its operation. One of them, who hired a foreman, refused to state what he paid his foreman and refused to testify that it did not exceed $40 per month. The wages herein referred to were in addition to board and lodging. Appellee's successor testified that he did the work for $50 and his dinners, and that he lodged and otherwise boarded himself, but it also appeared that he claimed more and afterwards settled on that basis. Shine, a nephew of appellant, testified that near the close of appellee's employment he was sent by appellant to the farm to go over the accounts of the farm, and that while he was there appellee told him that he was working at $40 per month. Appellee denied this conversation.

The letter of June 25, 1906, from appellant to appellee, is capable of the construction that appellant meant that he would see appellee well paid for his services in connection with getting the four colts to Lexington. His horses, one of which he said he was going to give appellee, ranged in value from $2500 to $10,000. Appellant never gave appellee any horse, and he did not, after the Lexington races were over, offer him any additional compensation because of his services there. The letter contained instructions about many other matters connected with the farm and is capable of the construction that he intended to see appellee well paid for all the work he thereafter did for appellant. Certainly if appellant understood that appellee was working for him for $40 per month all the time, it is strange that he should have told him that he would see him well paid. In view of the large increase in appellee's

duties and responsibilities from the time he took charge of everything and appellant went to the south to remain, the jury might well believe that appellant meant that because of these added responsibilities and duties appellee would be well paid and would be paid more than $40 per month. If the jury refused appellant the credit for $200, hereinafter discussed then a computation will show that they allowed appellee about $55 per month. The third item of the bill of particulars was as follows:

"To superintendent of farm and stock from March 1, 1906, to Sept. 28, 1909, 42 months and 28 days, at $80 per month.                    $3,435.00"

Appellant contends that this means that there was an express contract for $80 per month, and that such express contract for $80 per month is not proved, and that appellee could not recover for that period under an implied contract. We are of opinion that the bill of particulars does not mean to state whether appellee seeks to recover for that time under an express or an implied contract, but only states the time and the amount which he would claim. While the jury might have found differently under this evidence, yet we cannot say that they should have done so nor that their finding is unjust to appellant.

Appellant claimed a credit for $200 which appellee did not admit. The burden was upon appellant to prove that credit. He testified that in West Virginia, where he was at work upon a railroad contract, he placed $200 in bills in an envelope with a piece of paper on which he wrote that this was to pay the men, addressed the envelope to appellee, took it and other mail to the post office, handed it to the postmaster, who came out to him and received it, and told him to register this letter, but afterwards learned that he did not do so. Shine testified that he saw appellant put the money in the envelope but did not see him deliver it to the postmaster, and that when he afterwards went

over appellee's accounts, he called appellee's attention to the fact that he had not credited appellant with this $200 and that appellee said that he received it and that he had at the house the envelope in which the money came. Appellant testified that at about the end of appellee's employment appellee admitted to him that he received this money. Appellee denied that he received the money and that he made any such admissions either to Shine or to appellant. Appellant was a business man. He had a bank account here in Illinois. He made all other remittances to appellee by check. He gave no reason why he sent this remittance in bills. It was an unsafe way to send money and it was unreasonable that he should do it. He did not even write a letter to inclose with the money, giving either appellee's name and address or his own. He did not testify that he paid the postmaster the price of a registered letter, nor did he prove by the postmaster that he delivered such a package to him with directions to register it. Appellant testified that appellee is honest. The receipt of such a package through the mails on one occasion only could not fail to be remembered by appellee. We are of opinion that the jury were warranted in concluding that appellant had not supported the alleged credit by a preponderance of the evidence.

Complaint is made of the ruling of the court upon the instructions, but when they are all read as a series, we conclude that the jury were properly and sufficiently instructed. The refused instructions are in part embodied in those which were given for appellant and they omit the element of the increased duties and responsibilities placed upon appellee, and were in that respect insufficient under Ingalls v. Allen, 132 Ill. 170.

The judgment is therefore affirmed.

*Affirmed.*